In re CALIFORNIA CANNERS AND GROWERS, a California Agricultural Nonprofit Cooperative Association, Debtor.

John M. ENGLAND, Trustee, Plaintiff,

v.

NESTLE FOOD COMPANY, a Delaware corporation, formerly known as Carnation Company, Defendant.

No. C 94–1562–FMS.

United States District Court, N.D. California.

Aug. 22, 1994.

Leslie E. Orr, Welch Olrich & Mori, San Francisco, CA, for plaintiff.

Shannon F. Fallon, Gray Cary Ware & Freidenrich, Palo Alto, CA, for defendant.

## ORDER REVERSING DECISION OF BANKRUPTCY COURT; ORDER OF REMAND

FERN M. SMITH, District Judge.

### ISSUE

This appeal from the bankruptcy court's dismissal requires the Court to determine when the statute of limitations under 11 U.S.C. Section 546(a) begins to run. For the reasons herein discussed, the Court reverses the dismissal and remands this action to the bankruptcy court.

### INTRODUCTION

Plaintiff/appellant, John M. England, the Chapter 7 trustee for California Canners and Growers, filed this avoidance action against defendant/appellee Nestle Food Company, to recover payments made to defendant by Debtor. The bankruptcy court dismissed the complaint, holding that the claim was barred under Section 546(a) because the statute of limitations began to run with the filing of the Chapter 11 petition. Trustee appeals the dismissal on the ground that Section 546(a)'s statute of limitations begins to run with the filing of the petition for relief only where a trustee has not been appointed. Where a trustee has been appointed, Trustee contends, the statute of limitations runs with the appointment of that trustee.

### BACKGROUND

On June 13, 1983, California Canners and Growers ("Debtor"), doing business in the canned fruit and vegetable industry, filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code. On June 16, 1983, the bankruptcy court approved a debtor-in-possession loan agreement ("the DIP Loan Agreement") between Debtor and some of its major lenders ("the banks").

While the parties agree that under the DIP Loan Agreement, the banks were to provide post-petition financing for Debtor, they disagree as to Debtor's return promise. Defendant argues that certain banks were assigned rights to assets of the Debtor, including the estate's rights to pursue avoidance actions under section 547 of the Bankruptcy Code. Trustee contends that the banks were granted a first priority lien on all of the Debtor's assets, including after-acquired property, but that Debtor did not assign its rights to pursue actions under the Bankruptcy Code.

In 1986, Debtor brought an action against some of the banks pursuant to state lender liability laws ("Lender Liability Suit").

In 1990, Debtor moved to convert the bankruptcy to Chapter 7. On December 10, 1990, the bankruptcy court allowed the conversion and appointed appellant, John England, as trustee for Debtor.

At the time of the conversion, the Lender Liability Suit was still pending. In November of 1992, the Trustee executed a stipulation with the defendants of the Lender Liability Suit whereby the Lender Liability Suit would be dismissed and the banks' rights to Debtor's assets were released. While he contends that Debtor never assigned the estate's right to bring suits pursuant to the Bankruptcy Code, Trustee, nonetheless, received a release from the banks of the estate's right to pursue actions under the Bankruptcy Code. Trustee claims that he executed the release because he was unable to obtain counsel to represent him in the Lender Liability Suit and felt a release from the banks would eliminate any questions regarding the rights and duties of the Trustee.

On December 9, 1992, Trustee filed the instant action to recover payments made to defendant. On December 29, 1993, the bankruptcy court dismissed Trustee's complaint against defendant, with prejudice. The court held that the claim was barred because the statute of limitations under Section 546(a) began to run with the filing of the Chapter 11 petition in 1983.

Trustee appeals the bankruptcy court's dismissal, claiming that the statute of limitations began to run with the appointment of the first trustee on December 10, 1990.

## DISCUSSION

### I. The Standard of Review

█ The factual findings of the bankruptcy court are reviewed for clear error and its conclusions of law are reviewed de novo. *In re Ewell*, 958 F.2d 276, 279 (9th Cir.1992).

### II. Section 546(a)'s Two Year Statute of Limitations Began To Run With The Appointment Of The Chapter 7 Trustee

Section 546(a) provides that:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of (1) two years after the *appointment of a trustee* under section 702, 1104, 1163, 1302, or 1202 of this title; or (2) the time the case is closed or dismissed.

11 U.S.C. Section 546(a) (West 1993) (emphasis added)

"[T]he most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations". *In re San Joaquin Roast Beef*, 7 F.3d 1413, 1415 (9th Cir.1993). In *San Joaquin Roast Beef*, approximately eleven months after debtor filed a Chapter 11 petition, a Chapter 11 trustee was appointed. One year later, the case was converted into a Chapter 7 case with the appointment of a Chapter 7 trustee who filed an avoidance action against the FDIC one year following the conversion. The Ninth Circuit held that the claim was barred by the statute of limitations of section 546(a) because the statute of limitations began to run with the appointment of the first trustee, i.e., the Chapter 11 trustee. Most notably, the Ninth Circuit did not start the statute of limitations with filing

of the Chapter 11 petition but rather held that where a trustee had been appointed, the statute of limitations began to run with the appointment of that trustee.

Prior to *San Joaquin Roast Beef*, the Ninth Circuit held that the statute of limitations could run with the filing of the Chapter 11 petition, i.e., with the appointment of the debtor-in-possession. *In re Softwaire Centre Intern., Inc.*, 994 F.2d 682 (9th Cir.1993). Construing Section 546(a) in light of Section 1107(a), the court found that debtors-in-possession had the same powers and limitations as trustees. *Id.* at 683. Relying on the Tenth Circuit's decision in *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990), the court reasoned that since the debtor in possession was the "functional equivalent" of a trustee, the statute of limitations should run with the appointment of the debtor-in-possession.

Neither *Softwaire Centre* nor *Zilkha*, on which it relies, considered the case where a trustee was appointed after the appointment of the debtor-in-possession. The *Zilkha* court took "no position on whether subsequent appointment of a trustee in a Chapter 11 case would change the analysis." *Zilkha*, 920 F.2d at 1524, n. 11. *Softwaire Centre*, in adopting *Zilkha*, noted that "[h]ere the case has not been closed or dismissed, *nor has a trustee been appointed.*" *Softwaire Centre*, 994 F.2d at 683 (emphasis added). Thus, the holding in *Softwaire Centre* is limited only to those cases where no trustee has been appointed.

█ A recent California bankruptcy court, interpreting *San Joaquin Roast Beef* and *Softwaire Centre*, concluded that:

The upshot of *Softwaire Centre* and *San Joaquin Roast Beef* is that in the Ninth Circuit there are two distinct two-year limitation periods for avoiding actions subject to section 546(a). A debtor in possession gets two years from the date of filing the case. All trustees get two years from the date the first trustee was appointed.

*In re Iron–Oak Supply Corp.*, 162 B.R. 301 (Bkrtcy E.D.Cal.1993.) This analysis is per-

suasive. Further, the Court does not believe the Ninth Circuit intended to invalidate the Bankruptcy Code or that the *San Joaquin Roast Beef* panel meant to overrule another panel. The logical reconciliation of *Softwaire Centre* and *San Joaquin Roast Beef* is under the proposition that the statute of limitations pursuant section 546(a) begins to run with the filing of the Chapter 11 petition *unless* a trustee has been appointed whereby the statue of limitations runs with the appointment of that trustee.

"Where the statute's language is unambiguous, the inquiry into the meaning of the statute should begin and end with its language, and the Court's sole function is to enforce it according to its terms." *In re Hunt,* 136 B.R. 437 (Bkrtcy.N.D.Tex.1991). In the absence of clearly expressed legislative intent to the contrary, the language of the statute must be regarded as conclusive. *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993). Because the legislative history is brief and unilluminating, the Court must act in face of seeming Congressional oversight. *See, e.g.,* S.Rep. No. 95–989, 95th Cong., 2nd Sess. 86–87 (1978), reprinted in 5 U.S.Code Congressional & Administrative News, pp. 5787, 5872–73; 4 Collier on Bankruptcy ¶ 546.02 (1994). The plain language of section 546(a) refers to the appointment of a trustee in order to activate the statute of limitations. It is, therefore, manifest that in this case, the statute of limitations run with the appointment of the Trustee.

This conclusion is supported by the underlying policies of statutes of limitations in the Bankruptcy Code. Statutes of limitations are designed to spare courts from litigation of stale claims, and spare parties from defending claims where memories have faded or evidence has been lost. *Iron–Oak,* 162 B.R. at 307. "They are by definition arbitrary, and their operation does not discriminate between the just and unjust claim, or the voidable and unavoidable delay." *Id.* (quoting *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 313–314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (Jackson, J.)). It does not offend the concept of statutes of limitations that different plaintiffs may be entitled to bring the same action at different times. *Iron–Oak,* 162 B.R. at 306.

Furthermore, allowing the statute of limitations to run with the filing of the Chapter 11 petition, before any trustee is even appointed, would undermine the purpose of section 546(a). Since debtors in possession are often comprised of the same persons who are insiders of the debtor, there is a stronger possibility of fraudulent conveyances where the insiders can defeat avoidance actions simply by sitting on claims for at least two years. The avoidance powers of the bankruptcy trustee could then be circumvented by the very persons who are the most likely recipients of fraudulent conveyances.

The Court realizes that the length of elapsed time since the payments to defendant is longer than in either *Softwaire Centre* or *San Joaquin Roast Beef;* however, the plain meaning of the statute, coupled with the only interpretation which adequately reconciles the two cases, requires a finding that the claim by Trustee is not time barred[1].

## CONCLUSION

For the foregoing reasons, the Court REVERSES the dismissal of the Trustee's avoidance action against defendant/appellee Nestle. The action is REMANDED to the bankruptcy court for further proceedings consistent with this order.

SO ORDERED.

---

**1.** Because it was not raised, the Court takes no position as to the effects of collateral estoppel in this case.