In re The BENNETT FUNDING GROUP, INC. Debtors.

Richard C. Breeden, Trustee of The Bennett Funding Group, Inc., et al., Plaintiff,

v.

March 14, 2007.

270

Simpson Thacher & Bartlett LLP, James G. Gamble, Esq., Of Counsel, New York, NY, for trustee.

Patrick R. Bennett, Loretto, PA, Pro Se Defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER AND PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

STEPHEN D. GERLING, Chief Judge.

Before the Court are two motions related to the August 29, 1996 Amended Complaint ("Complaint") filed by Richard C. Breeden, Trustee ("Trustee") in The Bennett Funding Group, Inc. case.

The first is a motion filed on Sept. 28, 2005 by the Trustee for Partial Summary Judgment ("Trustee's Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), and Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") on counts XI, XXVII and XXIX of the Trustee's Complaint.

The second is Patrick Bennett's ("Bennett") Motion to Dismiss ("Bennett's Motion") filed on March 6, 2006, which seeks to dismiss those counts of the Complaint which name Bennett as a defendant,[1] or, in the alternative, to dismiss the Complaint in its entirety.

The Court heard oral argument on both motions at its regular motion term in Utica, New York on March 30, 2006.[2] Upon the conclusion of the March 30th hearing, the Court indicated that it would allow the parties until April 20, 2006 to submit supplemental briefs, and would take the matter under submission on that date.

---

1. Specifically, Bennett seeks dismissal of the following sixteen (16) counts of the Complaint: I, II, VII, X, XI, XII, XVI, XVII, XXVII, XXVIII, XXIX, XXXIV, XXXV, XXXVI, XLI, and XLII (the "Bennett Counts").

2. Bennett is presently incarcerated at the Federal Correctional Institution, Loretto, Pa., and participated telephonically in the oral argument.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(E), (H), (O) and (c)(1).

For purposes of the Trustee's Motion, Counts V and XXIX to XLIII of the Complaint are acknowledged by the Trustee to be "related to" claims within the meaning of 28 U.S.C. §§ 157(a) and 1334. *See* Complaint, ¶ 4. As such, this Court will treat Bennett's Motion (to dismiss as to these counts of the Complaint) as a "related to" non-core matter on which this Court can make only proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1).

## FACTS

On July 6, 1996 the Trustee commenced this adversary proceeding by filing a Complaint in The Bennett Funding Group Inc.'s case[3] against numerous defendants, including Bennett himself.[4][5] The Complaint contains allegations relating to what this Court has previously characterized as a "financial superweb" of dealings involving entities owned and/or controlled by the Bennett family, including Bennett. The Complaint contains forty-three counts in which the Trustee alleges, *inter alia*, actual and constructive fraud, unreasonably small capital, breach of fiduciary duty, negligence, turnover, and constructive trust.

Since the filing of the Trustee's Complaint, Bennett was indicted and tried on criminal charges in the U.S. District Court for the Southern District of New York. Bennett was convicted on seven counts of perjury and obstruction on March 2, 1999. At a second trial, ending on June 10, 1999, Bennett was convicted of forty-two felony counts of securities fraud, bank fraud, money laundering and transacting business with unlawfully obtained property. *See* Trustee's Statement of Uncontested Facts, ¶¶ 16, 23.[6] The jury also returned a forfeiture verdict against Bennett in the amount of $109,088,889.11.[7] It is Bennett's convictions at this second criminal trial that are relevant to the Trustee's Motion, which seeks partial summary judgment on counts XI, XXVII and XXIX of the Complaint. *See* Trustee's Motion at 5.

## ARGUMENT

### *Trustee's Motion for Partial Summary Judgment*

#### *Collateral Estoppel*

The Trustee's Motion asserts that the doctrine of collateral estoppel precludes

---

3. On March 29, 1996, The Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corp. ("BRC"), Bennett Receivables Corp. II ("BRC II") and Bennett Management and Development Corp. ("BMDC") (collectively "BFG" or "Debtors") filed petitions pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code")

4. Bennett was, at all times relevant to the Trustee's Motion, an officer and director of one or more of the Debtors. *See* Trustee's Statement of Uncontested Facts, ¶ 4; Affidavit of James G. Gamble, ¶ 6.

5. On August 29, 1996, the Trustee filed the Amended Complaint which is referred to above and is the subject of these two motions.

6. *See also Bennett v. United States*, 2006 WL 738162, *1, 2006 U.S. Dist. Lexis 12395 *3 (S.D.N.Y.2006).

7. Bennett was sentenced to thirty years imprisonment, followed by three years supervised release. This sentence was later vacated by the Second Circuit Court of Appeals, however, and remanded to the District Court for re-sentencing. *See United States v. Bennett*, 252 F.3d 559 (2d Cir.2001). Bennett ultimately received a twenty-two year prison sentence, which was subsequently affirmed by the Second Circuit. *See United States v. Bennett*, No.02–1379, 2003 U.S.App. LEXIS 19394 (2d Cir. Sept. 18, 2003).

Bennett from denying or re-litigating any of the facts or issues which formed the basis of the jury's guilty verdicts at Bennett's second criminal trial, but especially those which are related to the Complaint's counts XI, XXVII and XXIX. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951). The Trustee cites to the four specific requirements for the application of collateral estoppel:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986).

The Trustee then proceeds to make the following connections between Bennett's convictions at his second criminal trial, and counts XI, XXVII and XXIX of the Trustee's Complaint.

### Count XI of the Trustee's Complaint

Count XI of the Trustee's Complaint seeks the turnover, pursuant to Code § § 541 and 542, of $10 million which Bennett allegedly caused to be transferred to himself from BMDC.

In his Motion, the Trustee asserts that Bennett's conviction on criminal counts 85, 86, 87, 89 and 91 establishes that Bennett deposited five specific checks totaling $1.25 million drawn on BFG company accounts into his personal account. These criminal counts allege that Bennett "engage[d] and

attempted to engage in monetary transactions in and affecting interstate commerce in criminally derived property that was of a value greater than $10,000, and that was derived from specified unlawful activity, to wit, mail fraud, wire fraud, and fraud in the sale of securities." *See* Indictment, *United States v. Bennett et al.*, S1 97 Cr. 639(TPG), ¶ 79, Exhibit 'C' to the Affidavit of James G. Gamble.

Based on this conviction, the Trustee argues that Bennett caused at least $1.25 million in estate funds to be transferred to his personal accounts, facts sufficient to require turnover of that amount under Code §§ 541 and 542. To support this argument, the Trustee offers the criminal court's instructions to the jury which convicted Bennett on these counts. These instructions, in essence, required the jury to find that Bennett knowingly engaged or attempted to engage in monetary transactions involving criminally derived property valued over $10,000. *See* Trustee's Motion, p. 10. The Trustee asserts that these facts demonstrate that Bennett intentionally made the above transfers for the purpose of furthering unlawful activity.

Bennett's opposition to the Trustee's motion for partial summary judgment on count XI falls under two headings.

First, Bennett makes the argument that because the transfers referred to in counts 85, 86, 87, 89 and 91 took place prior to BFG's filing for bankruptcy protection, they cannot be subject to a turnover proceeding. *See* Bennett Reply Memorandum of Law, pgs. 2, 15; *see also* Bennett's Motion, p. 10.[8]

Second, Bennett asserts that because he did not have a possessory interest in the property at the time of the commencement

---

8. For purposes of his argument regarding civil count XI, Bennett incorporates by reference into his Reply Memorandum of Law certain portions, primarily pgs. 10–12, of his 2/24/06 Motion to Dismiss [the Trustee's] Complaint ("Bennett's Motion").

of the case, a motion for turnover is not appropriate. *See* Bennett's Motion, p. 11.

### Count XXVII of Trustee's Complaint

Count XXVII of Trustee's Complaint alleges fraudulent conveyance claims against all defendants, under Code §§ 548(a)(1), 544 and 550, and §§ 270 through 281 of the New York Debtor and Creditor Law ("NYDCL"). The Trustee asserts that Bennett's convictions on criminal counts 85, 86, 87, 89 and 91, as well as counts 64–69, 71, 72 and 77 (the money laundering counts), also preclude Bennett from relitigating those issues as they pertain to count XXVII of the Complaint. The Trustee asserts that Bennett's convictions on those criminal counts, establishing that he caused to be transferred to his personal accounts $1.25 million in estate funds, and that he engaged in money laundering, entitles the Trustee to partial summary judgment on this fraud count against Bennett under §§ 548(a)(1), 544 and 550 of the Code, and §§ 270 through 281 of the NYDCL. This is because under these sections it need only be shown that the transfers were made with the "actual intent to hinder, delay or defraud" present or future creditors of the estate. The Trustee asserts that Bennett's convictions on criminal counts 85, 86, 87, 89, 91, 64–69, 71, 72 and 77 establish this.

Bennett responds that Count XXVII specifically alleges transfers of funds which took place between March 30, 1995 and March 29, 1996, but that the transfers for which he was convicted under criminal counts 85, 86, 87, 89, 91 and 64–69, 71, 72 and 77 all took place between April 7, 1993 and January 3, 1995, not during the time period specified in Count XXVII of the Complaint. *See* Indictment, *United States v. Bennett et al.*, S1 97 Cr. 639(TPG), p. 40, *Exhibit 'C' to the Affidavit of James G. Gamble.* As a result, Bennett argues that his criminal convictions on these counts cannot possibly support the application of collateral estoppel to the Trustee's civil count XXVII.

### Count XXIX of Trustee's Complaint

Count XXIX of Trustee's Complaint alleges breach of fiduciary duty by Bennett by, *inter alia,* exposing the BFG companies to civil and criminal liabilities, penalties and sanctions, and damaging BFG's business reputation and goodwill. The Trustee asserts that Bennett's conviction on criminal counts 64–69, 71–72 and 77, involving money laundering by causing the Debtors to make unlawful payments to third parties in the amount of $46,915,000, constitutes a breach of his fiduciary duty as outlined in civil count XXIX. The Trustee also contends that Bennett's conviction on criminal counts 25, 32, 33 and 38, involving Bennett's defrauding three federally-insured savings institutions by inducing them to provide loans to the Debtors totaling $4,812,375.87, constitutes a breach of his fiduciary duty.

To support his contention that Bennett's criminal conviction on these counts constitutes a breach of his fiduciary duty, the Trustee cites the District Court's jury instruction, charging the jury that in order to convict Bennett on these charges (counts 64–69, 71–72 and 77), they must find:

> First, that the defendant knowingly conducted or attempted to conduct a financial transaction;
>
> Second, that the financial transaction involved property which, in fact, constituted the proceeds of specified unlawful activity;
>
> Third, that the defendant knew that the property involved in the financial transactions was the proceeds of some form of unlawful activity;
>
> Fourth, that the defendant engaged in the financial transaction with the intent

to promote the carrying on of the specified unlawful activity; or the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds or specified unlawful activity.

Jury Charge, pgs. 2457–58, Exhibit 'F' to Affidavit of James G. Gamble.

The Trustee asserts that because a jury found Bennett guilty of money laundering pursuant to these instructions, Bennett is necessarily "proven to have violated his fiduciary duties to the Debtors." Trustee's Motion at 13.

Similarly, under counts 25, 32, 33 and 38, for defrauding three federally-insured savings institutions into providing loans to the Debtors in the amount of $4,812,375.87, the jury was instructed that in order to find Bennett guilty they were required to find:

First: That ... the defendant executed or attempted to execute a scheme or artifice to defraud a bank, or that the defendant executed or attempted to execute a scheme or artifice to obtain money owned by or under the custody or control of that bank by means of false or fraudulent pretenses, representations or promises;

Second: The defendant knowingly and willfully engaged in a scheme or artifice ... and with specific intent to defraud the bank or to obtain, by deceiving the bank, money owned or controlled by the bank ..."

Jury Charge, pgs. 2453–54, Exhibit 'F' to Affidavit of James G. Gamble.

The Trustee again argues that the type of behavior described in these counts and jury instructions "are clear breaches of fiduciary duty." Trustee's Motion, p. 13.

Bennett's arguments against granting the Trustee partial summary judgment on count XXIX based on his conviction on the criminal counts noted above, as far as this Court can decipher them, are as follows:

First, Bennett claims that the Trustee's count XXIX allegations of breach of fiduciary duty are limited specifically to BFG and BMDC. Because of this specificity, counts 23 and 24 from Bennett's second criminal trial cannot be used to support partial summary judgment because they concern exclusively BRC and BRC II.

Second, Bennett claims that count XXIX is a non-core, "related to" count, and that this Court "lacks jurisdiction to enter any judgment on count [XXIX]." *See* Bennett Reply Memorandum of Law, p. 3; 3/30/06 Hearing Transcript, pgs. 24–28.

Third, Bennett attempts to make much of the fact that neither criminal trial resulted in his conviction on a Ponzi or "pyramid" scheme count. Bennett argues that because the Trustee's Complaint contains repeated allegations of a Ponzi scheme, the Trustee must establish that BFG was run as a Ponzi scheme in order to succeed on his motion for partial summary judgment. Bennett addresses this point several times. *See* Bennett Supplemental Memorandum of Law 4/14/06, pgs. 13, 14; Bennett Reply Memorandum of Law 3/17/06, pgs. 11, 12, 32, 38; Bennett's Motion, pgs. 19–22, 39, 41, 45, 47; and 3/30/06 Hearing Transcript, pgs. 75–77.

On a more general level, Bennett argues that collateral estoppel cannot be used by the Trustee to preclude him from re-litigating the issues in question because he has a *habeas* petition pending before the U.S. District Court for the Southern District of New York, seeking to set his criminal convictions aside due to ineffective assistance of counsel and a sentence imposed contrary to *Apprendi v. New Jersey*, 530

U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See* 3/30/06 Hearing Transcript, pgs. 75–77.[9]

Also as an argument against the application of collateral estoppel, Bennett offers the fact that an Administrative Law Judge declined to allow New York State to invoke collateral estoppel in a tax proceeding against Bennett, because "the criminal convictions were not tax-related offenses ..." Bennett Reply Memorandum of Law p. 29; *see also* 3/30/06 Hearing Transcript, p. 78.

### Standing

In further opposition to the Trustee's Motion, Bennett also makes several allegations regarding the Trustee's lack of standing to maintain these claims because of the lack of any individual creditor who has such standing. *See* Bennett's Motion, p. 24; 3/30/06 Hearing Transcript, pgs. 32–35; Bennett Reply Memorandum of Law, p. 15. The Trustee argues that under Code § 544, the Trustee has standing to bring claims on behalf of creditors, thousands of whom have been named in this case, and whose claims have been allowed. *See* Trustee's Reply Memorandum of Law, p. 5; *see also* 3/30/06 Hearing Transcript, p. 42.

### Bennett's Motion to Dismiss

Bennett, in turn, seeks dismissal of the Complaint based on seven separate grounds.[10] The first two, failure to allege a Ponzi scheme, and failure to satisfy Fed. R.Civ P. 9(b), apply to all forty-three counts of the Complaint. The third, that the Complaint was improperly based upon information and belief, applies only to the sixteen Bennett Counts. The remaining four grounds apply to various Bennett

Counts. Each of these alleged seven grounds for dismissal will be set out *infra*, with the two applicable to all forty-three counts treated first.

### 1. Failure to Allege a Ponzi Scheme

Bennett argues that all forty-three counts of the Complaint must be dismissed because they "attempt to accuse Bennett" of conducting a Ponzi scheme, and rely on "the underlying allegation of a Ponzi scheme throughout the amended complaint." Bennett's Motion, p. 20. "Breeden's reliance on the underlying requirement to allege a Ponzi scheme is interwound throughout, and central to, all aspects of the amended complaint." *Id.*, p. 21. "Each count of the amended complaint reincorporates and rely [*sic*] on the paragraphs that attempt to allege a Ponzi scheme ..." *Id.*, p. 22. "[T]he amended complaint [fails] to properly allege the elements of a Ponzi scheme ..." *Id.*

In response, the Trustee points to a Second Circuit Court of Appeals case defining a Ponzi scheme as:

> a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors. The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and to give the corporation the false appearance of profitability in order to obtain new investors.

Trustee's Response, p. 9 citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n. 3 (2d Cir.1995).

---

**9.** For the status of Bennett's habeas petition, see this Decision's "Other Collateral Estoppel Issues" section, infra.

**10.** Bennett's Motion lists thirteen separate grounds for dismissal of the various Bennett Counts of the Complaint. When those grounds are organized to take into account redundancy, their number reduces to seven.

The Trustee contends that ¶¶ 1, 38, 39 and 54 of the Complaint satisfactorily allege the existence of a Ponzi scheme as set out by the Second Circuit Court of Appeals in *Hirsch*. Those paragraphs of the Complaint allege that Bennett caused the Debtors to assign fictitious leases to investors or assign actual leases to multiple investors and lenders (Complaint, ¶ 39), caused the debtors to incur liabilities to individual investors far in excess of the available revenue stream from leases it actually funded (Complaint, ¶ 54), and produced fraudulent financial statements which created the appearance of income to the Debtors (Complaint, ¶ 1), resulting in the Debtors' liabilities exceeding their assets by over $650 million (Complaint, ¶ 38).

The Trustee argues that even though the facts alleged in the Complaint meet the Second Circuit Court of Appeals' definition of a Ponzi scheme as set out in *Hirsch*, it is not necessary for the Court to find that Bennett conducted a Ponzi scheme in order find in favor of the Trustee on each of the Bennett Counts.

### 2. Failure to Satisfy Fed.R.Civ.P. 9(b)

Bennett argues that all forty-three counts of the Complaint must be dismissed because they fail to allege fraud with particularity as required by the heightened pleading requirements of Fed.R Civ P. 9(b).[11] Bennett cites several cases for the proposition that a plaintiff alleging fraud must "specify the time, place, speaker, and content of the alleged misrepresentations." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001); *See* Bennett's Motion, p. 5–7. Bennett argues that the Complaint lacks the "who, what, where and why"

level of specificity required by Fed. R.Civ.P. 9(b). *Id.*

The Trustee responds that its allegations of fraud are supported by thirty-three detailed paragraphs spread over a dozen pages of its Complaint.[12] Again, the Trustee contends that these paragraphs detail the fraudulent activity (including the assignment of fictitious leases, multiple assignment of the same leases, and issuance of securities to investors using false and misleading offering documents), which led to the BFG's and BMDC's liabilities exceeding their assets by over $650 million. Alluding to the "law of the case" doctrine, the Trustee cites this Court's own findings in an earlier Bennett Decision concerning the detail of the allegations in the Complaint regarding the Fed.R.Civ.P. 9(b) requirements:

> the Trustee has gone into great detail in setting forth the factual allegations concerning [Bennett's] involvement in what the Trustee describes as a Ponzi scheme ... For example, in ¶ 41 of the [ ]Complaint, the Trustee alleges that P.Bennett 'caused Bennett Funding Group to assign leases to individual investors on leases that Bennett Funding Group did not own or were non-existent.' Paragraph 49 of the [ ] Complaint alleges that P. Bennett 'fraudulently and in breach of his fiduciary duties repeatedly caused Bennett Funding Group (a) to pledge to financial institutions, as collateral for loans, leases that were also assigned to individual investors; and (b) to assign to individual investors leases that were also pledged to financial institutions as collateral for loans.' The Court

---

**11.** That rule, made applicable to the Adversary Proceeding by Fed.R.Bankr.P. 7009, reads, in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b)

**12.** *See* Complaint, pgs. 13–25, ¶¶ 37–70.

finds that the Trustee has satisfied the requirements of Fed.R.Civ.P. 9(b). Trustee's Response, p. 8, citing *Breeden v. Bennett,* Case No. 97–65399, Adv. Pro. No. 98–70876A, slip op. at 5 (Bankr.N.D.N.Y. February 9, 1999).

In addition, the Trustee asserts that what Fed.R.Civ.P. 9(b) requires is "a pleading of 1) specified facts, 2) sources that support the alleged specific facts and 3) a basis from which an inference of fraud may fairly be drawn." *Breeden v. Bennett (In re Bennett Funding Group),* 220 B.R. 743, 753 (Bankr.N.D.N.Y.1997). These three requirements, the Trustee argues, are more than met by the Complaint's detailed discussion of specific fraudulent transactions and the methodology used to perpetrate them.

Moreover, the Trustee points out that the Fed.R.Civ.P. 9(b) particularity requirement applies only to fraud counts; of the Bennett Counts, only counts I, XVI and XXVII are claims of fraud. The remaining Bennett Counts, II, VII, X, XI, XII, XVII, XXVIII, XXIX, XXXIV, XXXV, XXXVI, XLI and XLII are not claims based on fraud, so the heightened standard would not apply to them.

### 3. Improperly Based "Upon Information and Belief"

In support of his argument that the sixteen Bennett Counts must be dismissed because they are improperly based upon information and belief, Bennett cites *Lesavoy v. Lane,* 304 F.Supp.2d 520, 527 (S.D.N.Y.2004) for the proposition that "[p]leadings 'on information and belief' are inadequate and must be dismissed as a matter of law." Bennett's Motion, p. 8 (citing *Lesavoy,* 304 F.Supp.2d at 527). He also cites *Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) for the proposition that "Rule 9(b) pleadings cannot be based upon

information and belief." Bennett does acknowledge an exception to the *Di Vittorio* rule: that a plaintiff *can* plead upon information and belief "as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." *Id.* Bennett argues that this exception does not apply to the instant case because at the time the Complaint was drafted, the Trustee had in his possession the books and records of BFG, and had spent "tens of millions of dollars" to have accountants and attorneys review those records. The exception also would not apply, according to Bennett, because the allegations in the Complaint "were not accompanied by a statement of the facts upon which the belief is based." Bennett's Motion, p. 9 (citing *DiVittorio,* 822 F.2d at 1247).

The Trustee asserts that his Complaint was not pled entirely on information and belief, but was, in fact, "brought on the Trustee's personal knowledge as to himself and his own actions and on information and belief as to all other matters, based upon an ongoing investigation involving numerous interviews and the review of thousands of pages of documents." Trustee's Response, p. 10, citing Complaint, p. 2. In addition, the Trustee contends that the *DiVittorio* exception to Fed.R.Civ.P. 9(b) pleadings is relevant in this instance because at the time the Complaint was filed the Trustee "clearly was not in possession of detailed information regarding all of the fraudulent acts committed by Bennett and his co-conspirators." Trustee's Response, p. 5.

### 4. Code § 548 One Year Time Limit

Bennett contends that counts I, II, XVI, XVII, XXVII and XXVIII which allege, *inter alia,* violations of Code § 548, must be dismissed because they do not allege

any violations within the one year period immediately preceding the Debtors' filing, as required by that section of the statute. Bennett claims that he "combed the entire 97 page [Complaint] and [did] not find the specific transactions ... that took place allegedly between 'March 30, 1995 and March 29, 1996.'" Bennett's Motion, p. 13. Bennett cites *In re OPM Leasing Services, Inc.*, 32 B.R. 199 (Bankr.S.D.N.Y. 1983) *rev'd on other grounds*, 48 B.R. 824 (S.D.N.Y.1985) for the proposition that there is no "elasticity" in the one year period specified in Code § 548.

The Trustee asserts that the three predicate transactions underlying each of these counts occurred within the one year limit imposed by Code § 548, and that the relevant dates of the transactions are set out clearly in each of these counts in the Complaint. Moreover, the Trustee argues that even if the predicate transactions took place outside of the one-year limit, each of these counts also alleges violations of §§ 270 through 281 of the NYDCL, which have a statute of limitations reaching back six years from the date of the filing of the petition and are made applicable here pursuant to Code § 544(b).

### 5. Improperly Asserted Turnover Counts

Bennett contends that counts VII, X, XI, and XII must be dismissed because these counts seek turnover of funds which were transferred prior to the commencement of BFG's filing. Bennett argues that any transfer effected prior to the commencement of filing is not subject to turnover pursuant to Code § 542. He also argues that in order to be subject to a Code § 542 turnover action, the property in question must have been in Bennett's "possession, custody or control" at the time of the commencement of BFG's bankruptcy case. Bennett's Motion, p. 11 (citing *In re Gold-*

*en Distributors, Ltd.*, 128 B.R. 342 (Bankr. S.D.N.Y.1991)).

The Trustee counters that, purely as a matter of law, *United States v. Whiting Pools*, 462 U.S. 198, 202–03, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) does not require that the debtor have a possessory interest in the property subject to Code § 542 turnover at the commencement of the case.

Secondly, the Trustee asserts that as to the possession, custody or control issue, count X does allege that Bennett was in possession, custody or control of the specific property. As for counts VII, XI and XII, the Trustee contends that because cash is fungible, the Trustee is not required to allege that the "specific cash proceeds" were still in Bennett's possession, custody or control at the time of the petition.

### 6. Trustee Lacks Standing Under §§ 544 and 550

Bennett asserts that counts I, II, XVI, XVII, XXVII and XVIII which allege, *inter alia*, violations of Code §§ 544 and 550, must be dismissed because the Trustee lacks standing to maintain these counts. Bennett asserts that in order for the Trustee to have standing to utilize his powers under these sections of the Code, § 544 requires that the Trustee "name the actual unsecured creditor who would have standing to attack the transfer." Bennett's Motion, p. 16. Bennett cites *In re Wingspread Corporation*, 178 B.R. 938 (Bankr. S.D.N.Y.1995) for the proposition that "the mere allegation of the existence of an unsecured creditor who would have standing [is] insufficient" to meet this requirement. Bennett's Motion, p. 16 (citing *In re Wingspread Corporation*, 178 B.R. at 946). Bennett contends that the Trustee did not name such a creditor in his Complaint, and as a result does not have standing under Code § 544 to maintain counts I,

II, XVI, XVII, XXVII and XVIII of the Complaint.

The Trustee responds, first, that even if Bennett were correct that the Complaint did not allege the existence of an unsecured creditor who would have standing, each of the relevant counts also alleges violations of NYDCL §§ 270 through 281, which do not require the existence of such a creditor. As a result, the counts would remain viable in any event. But the Trustee also argues that the Complaint does in fact contain the names of unsecured creditors as required by Code § 544 and *In re Wingspread*. The Trustee notes that the Complaint states that the Trustee has standing "acting on behalf of BFG, BMDC and their creditors." Trustee's Response, p. 11, citing Complaint, ¶ 171. Secondly, the Trustee contends that the Code § 544 and *In re Wingspread* standing requirement is met because the Complaint contains the names of several creditors allegedly defrauded by Bennett, such as Karl L. Ackerman (Complaint, ¶ 50), the Edwin Golden Living Trust (Complaint, ¶ 56), and Robert and Frances Cavalero (Complaint, ¶ 58).

### 7. Failure to Allege a State or Federal Statute

Bennett argues that counts XXIX, XXXIV, XXXV, XLI and XLII, alleging, respectively, Breach of Fiduciary Duty, Breach of Fiduciary Duty—Self Dealing, Breach of Fiduciary Duty—Corporate Waste and Mismanagement, Accounting, and Constructive Trust, must be dismissed because they fail to put Bennett on notice as to alleged violations of any specific state or federal statute. As a result, Bennett argues, he is not "on notice of the charges upon which he must defend himself, to ensure [Bennett's] constitutional rights to due process of law." Bennett's Motion, p. 18.

The Trustee responds that counts XXIX, XXXIV, and XXXV are also violations of Bennett's duties under § 720 of the New York Business Corporation Law ("NYBCL"), which allows an action to be maintained against an officer or director of a corporation "to procure judgment for ... [t]he neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge ..." NYBCL § 720. Moreover, the Trustee argues that counts XLI and XLII, seeking an accounting and to impose a constructive trust, are grounded in the Complaint's allegations of § 542(a) violations. However, the Trustee does not discuss how this would address Bennett's concerns regarding lack of notice of a violation of a specific statute in the Complaint itself.

### DISCUSSION

*Trustee's Motion for Partial Summary Judgment*

*Standing*

The Trustee, as representative of the estate, has the exclusive capacity to sue and be sued on behalf of the estate. *See* Code § 323(b); *In re Henry–Luqueer Properties, Inc.*, 145 B.R. 771, 774 (Bankr. E.D.N.Y.1992) (holding that under Code § 323(b) a trustee is empowered to commence an adversary proceeding on behalf of the estate). Fed.R.Bankr.P. 6009 permits the Trustee to prosecute any action on behalf of the estate without the need to obtain bankruptcy court approval. *See* Fed. R. Bankr.P 6009; *In re Capgro Leasing Associates*, 169 B.R. 305, 312–13 (Bankr.E.D.N.Y.1994) (holding that Fed. R.Bankr.P. 6009 gives a Trustee the discretion to decide whether to litigate an action, and to do so without court approval). However, neither Code § 323 nor

Fed.R.Bankr.P. 6009 confers standing on the Trustee.

■ Code §§ 541, 544 and 547 do confer such standing on the Trustee. "Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia,* on the rights of the debtor and on certain rights of the debtor's creditors ..." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2d Cir.1995) (citing Code §§ 541, 544 and 547).[13] Moreover,

> [u]nder federal law, bankruptcy trustees have standing to pursue the claims of the bankruptcy estate, that is, the insolvent corporation. While a bankruptcy trustee may assert only the claims that belong to the bankruptcy estate, those claims may include the interests of creditors in the sense that the trustee has the duty to marshall the assets of the estate so that they can be distributed to creditors on a pro rata basis.

*In re Parmalat Securities Litigation,* 377 F.Supp.2d 390, 420 (S.D.N.Y.2005).

■ As suggested above, the Trustee's standing is not limited exclusively to actions belonging to the debtor. Standing is generally governed by state law; that does not mean, however, that state law claims belonging to creditors are beyond the Trustee's reach:

> The Bankruptcy Code permits the trustee to assert claims which belong to the debtor, or under his 'strong arm' or avoiding powers, belong to the debtor's creditors under state law. The Bankruptcy Code authorizes the trustee to prosecute such claims for the benefit of all creditors, and necessarily deprives individual creditors of standing to pursue the same claims for their sole benefit.

*In re Keene Corp.,* 164 B.R. 844, 851 (Bankr.S.D.N.Y.1994) (citing *St. Paul Fire and Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989)).

■ Counts XI and XXVII of the Complaint were brought by the Trustee on behalf of "BFG, BMDC and their creditors." As these two counts allege violations of Code §§ 541, 542, 544, 548(a)(2) and 550 as well as NYDCL §§ 270 through 281, the Trustee clearly has standing to bring these actions.

■ Nor is the Trustee's standing limited to the avoidance powers allotted to him by the Code. Case law also provides that a trustee has standing to pursue an officer of the debtor for breach of fiduciary duty. "[W]hile normally the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984) (citing *Pepper v. Litton,* 308 U.S. 295, 306–7, 60 S.Ct. 238, 84 L.Ed. 281 (1939)). Thus, the Trustee has standing to maintain count XXIX, alleging Bennett's breach of fiduciary duty to BFG and BMDC.

■ One exception to a trustee's standing to bring suit was set out in *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991). "A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Id.* at 120. It is clear, however, that Bennett was not a third party when he committed the acts which resulted in his convictions at his second criminal tri-

---

**13.** *But see Id.* (holding that "when creditors ... have a claim for injury *that is particularized as to them,* they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.") (emphasis added).

al.[14] And it is those convictions upon which the Trustee seeks to base his Motion for Partial Summary Judgment. Hence, the *Wagoner* exception to the Trustee's standing does not apply to the matter currently before the Court.

### Collateral Estoppel [15]

### Gelb Factors

The Trustee lists the four criteria for the application of collateral estoppel in a federal case as set out in *Gelb*, 798 F.2d at 44.[16] As the doctrine of collateral estoppel is at the very center of the Trustee's motion for summary judgment, it is worth taking the time to examine these criteria.

Whether or not the issues addressed in Bennett's second criminal trial and the matter *sub judice* are identical,[17] as well as the previously litigated issue's necessity to the final judgment, and whether they were actually litigated and decided, will be addressed *infra*, as the Trustee's motion for partial summary judgment on each of the Complaint's counts XI, XXVII and XXIX is analyzed.

First, Bennett claims that he did not have a full and fair opportunity to litigate the issue in the second criminal trial.[18] *See* Bennett Reply Memorandum of Law, p. 23. Bennett maintains that during that trial he was represented by court-appointed public defenders from the Legal Aid Society, who were "admittedly ill-equipped to represent Bennett in a complex case ..." *Id.* More specifically, these public defenders exhibited a "failure to understand the essential elements and required factual findings for the second trial counts of conviction." *Id.* at 25. Moreover, these lawyers repeatedly failed "to lodge timely objections to ... erroneous [jury] instructions." *Id.* Bennett also asserts that the jury instructions the Trustee relies upon in his motion "were plagued with prejudicial, constitutional errors, resulting in an unreliable verdict ..." *Id.*

If these allegations were to prove credible, they could indeed call into question Bennett's "full and fair opportunity" to litigate the relevant issues in the second criminal trial. Significantly, another court has had the opportunity to subject these allegations, and the record underlying them, to close analysis. In a very recent

---

14. Bennett was, at all times relevant to the Trustee's Motion, an officer and director of one or more of the Debtors. *See* Trustee's Statement of Uncontested Facts, ¶ 4; Affidavit of James G. Gamble, ¶ 6.

15. For the purposes of this Decision, the terms "collateral estoppel" and "issue preclusion" will be used interchangeably. *See Collier on Bankruptcy*, 15th Ed. Rev. § 523.06 (2006) (stating that collateral estoppel is also referred to as issue preclusion).

16. (1) The issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *See Gelb, supra.*

17. It is worth noting that "[t]he most difficult element of the test is the requisite 'identity of issue' requirement of the first prong." Hon. Barry Russell, Bankruptcy Evidence Manual § 3:1, at 257 (2007).

18. "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues ... whereas *the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue* [in the prior action]." *Evans v. Ottimo*, 469 F.3d 278, 281–82 (2d Cir.2006) (citation omitted) (emphasis added). *See also In re Moskowitz*, 310 B.R. 21, 28 (Bankr.E.D.N.Y.2004); *In re Halperin*, 215 B.R. 321, 335 (Bankr.E.D.N.Y. 1997).

decision, District Judge Paul A. Crotty of the U.S. District Court for the Southern District of New York, examined Bennett's allegations of nineteen errors by his trial and appellate counsel which allegedly deprived him of his Sixth Amendment right to effective assistance of counsel and appellate counsel. Judge Crotty reviewed the trial and appellate records, and each of these nineteen allegations in detail, and found no merit whatsoever to any of them, or to their claimed "cumulative effect." *See Bennett v. United States*, 2006 WL 738162, *8–15, 2006 U.S. Dist. LEXIS 12395, *25–46 (S.D.N.Y.2006), *aff'd on reconsideration*, 2006 WL 1751242, 2006 U.S. Dist. LEXIS 43225 (S.D.N.Y.2006). Judge Crotty also found that with respect to Bennett's allegations of incorrect jury instructions, "the [trial] court's charges and instructions correctly stated the law." *Id.* at *10, 2006 U.S. Dist. LEXIS 12395, *31. As a result, this Court finds that Bennett's counsel's representation did not deprive him of a full and fair opportunity to litigate the issues in question.[19] And as Bennett offers no other evidence for his not having had a full and fair opportunity to litigate the issues, this Court finds that Bennett has not fulfilled his burden of demonstrating that he did not have such a full and fair opportunity.

### Other Collateral Estoppel Issues

 Bennett also contends that the existence of his *habeas* petition pending before the U.S. District Court for the Southern District of New York (seeking to set his criminal convictions aside due to ineffective assistance of counsel and a sentence imposed contrary to Supreme Court jurisprudence), should prevent the Trustee from successfully invoking collateral estoppel.[20]

 This argument fails for two reasons. First, "[p]endency of an appeal does not deprive a judgment of its preclusive effect." *In re Bennett Funding Group, Inc.*, 1998 Bankr.LEXIS 1938 *77 (Bankr. N.D.N.Y.1998) (citations omitted). *See also In re Kelly*, 155 B.R. 75, 78 (Bankr. S.D.N.Y.1993) (holding that collateral estoppel may be applied when the prior judgment is on appeal).[21] Second, as indicated above, since this matter was submitted, Bennett's *habeas* petition was dismissed in its entirety by *Bennett v. United States*, 2006 WL 738162, 2006 U.S. Dist. LEXIS 12395 (S.D.N.Y.2006). That decision held not only that Bennett's *habeas* petition presented no question of substance for appellate review, but also that its decision was not appealable. Bennett's subsequent motion for reconsideration was denied by *Bennett v. United States*, 2006 WL 1751242, 2006 U.S. Dist. LEXIS 43225 (S.D.N.Y.2006).[22]

 There remains Bennett's contention that an Administrative Law Judge in a

---

**19.** *See* discussion, *infra*, regarding the status of Bennett's appeal of this decision and its effect on the Court's findings.

**20.** *Ibid.*

**21.** "Although the doctrines of preclusion require a final judgment before they can be applied effectively, this requirement is more flexible for purposes of issue preclusion than it is [for] claim preclusion. The *Restatement (Second)* [of Judgments § 13 (1982)] provides that for 'purposes of issue preclusion ... final judgment includes any prior adjudication of an issue that is determined to be sufficiently firm as to be accorded conclusive effect.'" Christopher Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr.L.J. 839, 853 (2005).

**22.** Bennett recently succeeded in obtaining a Certificate of Appealability regarding this decision from the U.S. Second Circuit Court of Appeals. However, because pendency of an appeal does not deprive a judgment of its preclusive effect, that development in no way changes this Court's findings.

New York State tax proceeding against Bennett did not grant preclusive effect to Bennett's criminal convictions in that proceeding. As quoted by Bennett, however, the rationale for not applying collateral estoppel in that proceeding was that "the criminal convictions were not tax-related offenses . . ." Bennett Reply Memorandum of Law p. 29; *see also* 3/30/06 Hearing Transcript, p. 78. In the matter at hand, however, Bennett's criminal convictions are "Code-related" offenses. The Trustee has outlined in considerable detail how the acts for which Bennett received criminal convictions are also violations of the Code and NYDCL sections specified in the Complaint. The fact that Bennett's criminal convictions were not granted preclusive effect in a state tax proceeding offers little in the way of a colorable argument against the application of collateral estoppel in the matter *sub judice.*

### Count XI of the Trustee's Complaint

■■■■ The Trustee's argument is that Bennett's conviction on criminal counts 85, 86, 87, 89 and 91 (that he unlawfully deposited five specific checks drawn on a Bennett company account totaling $1.25 million into his personal account), entitles the Trustee to partial summary judgment in that specific amount on count XI of the Complaint for turnover of some $10 million which Bennett allegedly transferred to himself from BMDC. There is the requisite identity of issues between the two proceedings because the five unlawful transfers for which Bennett was convicted fall within the purview of, or are encompassed by, civil count XI's "$10 million wrongfully diverted to [Bennett's] personal account

from BMDC from 1992 through 1995 . . ." Clearly the issue of Bennett's illegal transfer of these funds was, as required by *Gelb,* necessary to support a valid and final judgment on counts 85, 86, 87, 89 and 91; Bennett could not have been convicted on those counts otherwise.

■■■■ Bennett opposes summary judgment on this count first on the basis that the transfers in question cannot be the subject of a turnover because they occurred prior to the time the Debtors entered bankruptcy. However, Bennett neglects to note that "the general turnover provision of the Bankruptcy Code recognizes that property of the estate includes property in the possession of third parties other than the debtor *at the time of the commencement of the bankruptcy case."* Bankruptcy Service, L.Ed. § 4B:29 (2006) (emphasis added) (citing *In re Brown,* 106 B.R. 546 (Bankr.N.D.Ill.1989), *rev'd on other grounds,* 126 B.R. 767 (N.D.Il.1991)). Thus, by its very definition, turnover under Code § 542 exists to address transfers of estate property which took place *prior* to the commencement of the case. Indeed, *United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the landmark U.S. Supreme Court case cited by Bennett, involved a pre-petition transfer which the Court held was subject to the Code's turnover provision.[23]

■■■■ Second, Bennett argues that because the Trustee's Complaint does not allege that Bennett had a possessory interest in the property at the time of the commencement of the case, a motion for turnover is not appropriate.[24] Bennett's

---

**23.** "The Supreme Court noted specifically that § 542(a) of the Bankruptcy Code is a provision that brings property into the bankruptcy estate that was not in the possession of the debtor at the time the bankruptcy proceeding was commenced." Bruce H. White,

*Debtors' Redemption Rights in Repossessed Vehicles and Turnover of Estate Property,* 17–10 Am. Bankr.Inst. J., Dec. 1998 (citing *Whiting Pools* ).

**24.** Bennett does not indicate who was in actual or constructive possession of the property

argument here may stem from his lack of awareness that Code § 542, unlike the Bankruptcy Act of 1898, does not require that the property in question be "in the actual or constructive possession, custody or control of the bankruptcy court ..."[25] *In re Brown,* 106 B.R. at 548. Nor did the turnover provisions of the 1898 Act extend to property held by third persons under claim of right. Code § 542 does. *See In re Brown, Id.* (opining that the turnover provisions of the Code represent a radical departure from the scheme under the Bankruptcy Act, and clearly include as property of the estate property in the possession of third parties on the date of the filing of debtor's petition.)

Under the Code, requiring possession by the defendant of the property sought for turnover simply makes no sense. "Section 542(a) ... requires the delivery of the property *or the value of* the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply by transferring the property to someone else. That is not what the statute says ... and can't be what it means." *In re Dybalski,* 316 B.R. 312, 315 (Bankr. S.D.Ind.2004) (emphasis in original) (citing *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith and Cutler, P.A. (In re USA Diversified Products, Inc.),* 100 F.3d 53 (7th Cir.1996)).

A leading bankruptcy treatise sheds more light on the possession issue upon which Bennett seeks to rely:

> The general turnover provision of the Bankruptcy Code which requires the delivery of property to the estate is generally limited to the return of specific property in the actual or constructive possession of a third party at the time the turnover proceeding is commenced. Nevertheless, lack of possession of the property at issue is not an obstacle which will prevent the court from ordering a turnover of such property, where there is a person or entity in a fiduciary relationship with the debtor and such person or entity intentionally divests the property in breach of that relationship.

Bankruptcy Service, L.Ed. § 4B:34 (citing *In re DeBerry,* 59 B.R. 891, 896 (Bankr. E.D.N.Y.1986) (holding that the lack of possession is not an obstacle to turnover where there is a person in a fiduciary relationship with the debtor who intentionally diverts the property in a breach of that relationship)).[26]

The record in Bennett's criminal trials makes it extremely clear that, as in *DeBerry,* Bennett's lack of possession will pose no bar to an order for turnover given his

---

sought for turnover at the time of BFG's filing. This is not surprising, given his criminal convictions on the counts cited by the Trustee. *See* this Decision's discussion of collateral estoppel, *passim.*

**25.** Under the Bankruptcy Act of 1898 the question of whether a bankruptcy referee had summary or plenary jurisdiction over a matter, as well as what constituted "property of the estate" hinged on whether the debtor or referee ("bankruptcy court") had "actual or constructive possession of the debtor's property." With the advent of the Bankruptcy Code, the summary/plenary jurisdictional distinction was eliminated in favor of "core" and

"non-core" matters as set out in 28 U.S.C. § 157. (Turnover is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(e)). Bennett relies on cases which held that absent actual or constructive possession of the property by the debtor on the date of filing, a motion for turnover is not appropriate. Such cases no longer represent good law.

**26.** Bennett, however, cites *In re DeBerry* for the proposition that the "trustee must allege and prove that property sought to be turned over is in possession or control of the defendant at time proceeding is commenced." Bennett's Motion, p. 12.

convictions and, as discussed *infra*, the resulting breach of fiduciary duty.

Many of the cases Bennett cites to support his position are pre-Code cases. Needless to say, these cases do not comport with current law regarding possession and turnover. And when Bennett does cite a Code case, it usually offers less than compelling support for his proposition. For example, Bennett cites *In re Golden Distributors, Ltd.* for the proposition that a "trustee cannot bring [a] turnover action absent defendant[']s being in possession of property that could be subject to 'turnover.'" Bennett's Motion, p. 11 (citing *In re Golden Distributors, Ltd.*, 128 B.R. 342 (Bankr.S.D.N.Y.1991)). However, the facts in *Golden Distributors* were such that the movant "could not point to any *res*, or property of the estate, in the possession or control of the defendants which may be the subject of a turnover proceeding." *Id.* at 347. In the words of the *Golden Distributors* court, the property sought to be turned over simply did not exist: "... no confidential lists of the debtor's delivery routes ... no confidential proprietary business information ... no property interest with respect to its potential customers ..." *Id.* In the case at bar, the Trustee has pointed to a specific *res* which may be the subject of a turnover proceeding—the BMDC funds Bennett was convicted of illegally diverting to his personal account.

█ Bennett's citation to *In re Burkey*, 68 B.R. 270 (Bankr.M.D.Fla.1986), however, is on slightly firmer ground. In *Burkey* the court held that the property in question, stock certificates, was not subject to turnover because it was legally transferred prior to commencement of the case. What Bennett misses, however, is that the *Burkey* court looked to state law in order to determine whether the stock certificates had been legally transferred. In turnover motions, courts routinely look to state law in order to determine whether the property in question is property of the estate. *See In re Mid–Island Hospital*, 254 B.R. 71, 74 (E.D.N.Y.2000) (holding that whether a particular item is property of the estate in bankruptcy is governed by principles of state law); *see also In re Nat'l Equip. & Mold Corp.* 64 B.R. 239 (Bankr. N.D.Ohio 1986); *In re Stage*, 85 B.R. 880 (Bankr.M.D.Fla.1988). In *Burkey*, the court found that the stock certificates had been lawfully transferred pursuant to Florida securities laws prior to commencement of the case. Hence, they were not, in the language of Code § 542(a), "... property that the trustee may use, sell, or lease under section 363 of this title ..." Unfortunately for Bennett, a jury of his peers reached a quite different conclusion regarding the legality of his transfer of the $1.25 million of BMDC funds at issue here. Thus, the *Burkey* decision is of no relevance to the matter at hand.[27]

There is identity of the issues between those determined in Bennett's conviction on criminal counts 85, 86, 87, 89 and 91 and those alleged in count XI of the Complaint, and Bennett's objections to the application of Code § 542 lack a foundation in the Code and case law. For these reasons, as well as the fact that the criminal court's findings on the issues were

---

**27.** Had the circumstances been slightly different, Bennett might have argued that the $1.25 million is not property of the estate for the purposes of turnover because *fraudulently transferred property* does not become property of the estate until it is recovered. *See, e.g., In re Teligent, Inc.*, 307 B.R. 744, 751 (Bankr. S.D.N.Y.2004) (holding that the trustee cannot compel turnover of non-estate property under § 542 and circumvent the more restrictive requirements of a fraudulent transfer claim in the process.) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir.1992)).

necessary to the jury verdict on the illegal transfer of the funds to Bennett's personal account, the application of collateral estoppel to the criminal trial's jury verdict in the second criminal trial is appropriate as to count XI.

### Count XXIX of Trustee's Complaint

First, this Court need not reach the merits of Bennett's argument that criminal counts 23 and 24 cannot be used to support partial summary judgment on count XXIX for breach of fiduciary duty because those criminal counts concern BRC and BRC II exclusively.[28] This is because the Trustee's Complaint lists a half dozen other criminal counts for which the judge in the criminal trial issued the jury charge set out above. Bennett makes no attempt to convince the Court that his conviction on those counts would not constitute serious breaches of fiduciary duty.

Second, Bennett claims that count XXIX is a non-core, "related to" count, and that this Court "lacks jurisdiction to enter any judgment on count [XXIX]." Bennett Reply Memorandum of Law, pgs. 3, 8.

In compliance with Fed.R.Bankr.P. 7008, the Trustee included a statement in his Complaint admitting that count XXIX was a non-core "related to" proceeding within the meaning of 28 U.S.C. §§ 157(a) and 1334. The Trustee makes a strong argument, however, both in section I(A) of its Memorandum of Law in Reply to Bennett's opposition to the Trustee's Motion for Partial Summary Judgment, and in oral argument (see 3/30/06 Hearing transcript, pgs. 25–27), that by asking this Court to dismiss count XXIX, Bennett has effectively consented to this Court's jurisdiction to enter a final order.

▮ If parties do not consent to the entry of final judgment in a non-core proceeding, the bankruptcy court must submit its proposed findings of fact and conclusions of law to the district court, which is empowered to enter final judgment after a *de novo* review of any disputed issues. *See* 28 U.S.C. § 157(c)(1). In *In re Basix Corporation*, 1996 WL 517667, 1996 U.S. Dist. LEXIS 13263 (S.D.N.Y.1996) District Court Judge John S. Martin, Jr. of the U.S. District Court for the Southern District of New York held that consent to entry of a final judgment may be either express or implied. *Id.* at *4–5, 1996 U.S. Dist. LEXIS 13263, *12. Judge Martin ruled that a party's request for final judgment from a bankruptcy court constituted such an implied consent to entry of a final judgment. The Second Circuit Court of Appeals has held that a party's silence on the core/non-core jurisdictional issue can be construed as implied consent. *See In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir.1987); *see also In re Donald Sheldon & Co., Inc.*, 1992 WL 396885, *4, 1992 U.S. Dist. LEXIS 19232 *12 (S.D.N.Y.1992) (holding that a demand for an order dismissing the complaint is consent to entry of final judgment).[29]

It is also true, however, as Bennett averred in both his Reply Memorandum of Law and at oral argument on March 30, 2006, that in his March 17, 2006 Answer to [the Trustee's] Complaint, Bennett expressly refused to consent to the entry of a

---

**28.** None of the other criminal counts referenced in the Trustee's Motion or in this Decision 28 involve BRC or BRC II. Each involves some combination of BFG, BMDC and/or Bennett.

**29.** *See In re Durso Supermarkets, Inc.*, 1995 WL 739549, *3, 1995 U.S. Dist. LEXIS 18440

*9 (S.D.N.Y.1995) (holding that a dismissal is a final judgment on the merits); *Carlin v. Gold Hawk Joint Venture*, 778 F.Supp. 686, 693 (S.D.N.Y.1991) (holding that a dismissal of the complaint with prejudice constitutes a final judgment).

final order or judgment by this Court. *See* Bennett Answer to [Trustee's] Complaint, ¶¶ 11–13; Bennett Reply Memorandum of Law, p. 3; 3/30/06 Hearing Transcript, pgs. 24–28. While the case law is clear about a request for final judgment constituting implied consent to the entry of a final judgment, there are no cases addressing the issue of a party expressly refusing to consent to the entry of a final judgment, while at the same time impliedly consenting to it. Thus, this Court will treat the Trustee's motion for partial summary judgment as to count XXIX of the Complaint as a "related to" non-core matter on which this Court can make only proposed findings of fact and conclusions of law. *See* 28 U.S.C. § 157(c)(1).

Third, this Court is at a loss to understand Bennett's argument that the lack of a conviction on a Ponzi or 'pyramid' scheme count, in the face of all the other acts for which Bennett was convicted, somehow nullifies the Trustee's civil count for breach of fiduciary duty. Bennett makes this argument again and again. It is true that this Court has never finally ruled on whether the fraudulent activity which resulted in BFG's collapse constituted a Ponzi or 'pyramid' scheme. However, this Court is compelled to agree with Judge Martin, who presided over Bennett's second criminal trial, and ". . . found that the evidence 'established beyond any conceivable doubt that Bennett was the prime mover in a fraud that took hundreds of millions of dollars from the victim investors.'" *United States v. Bennett*, 252 F.3d 559, 565 (2d. Cir.2001) (quoting *United States v. Bennett*, 2000 WL 420547, 2000 U.S. Dist LEXIS 4928 (S.D.N.Y.2000)). That this fraud may not technically constitute a Ponzi or 'pyramid' scheme is of little moment to the Trustee's argument that the acts for which Bennett was convicted, on the criminal counts listed above, do in fact constitute breaches of fiduciary duty

on Bennett's part as outlined in civil count XXIX.

Bennett contends that the Trustee's Complaint "reincorporates and relies on the allegation of a Ponzi scheme . . . [and the Trustee's] motion fails as a matter of law." Bennett's Supplemental Memorandum of Law p. 14, 4/14/06. But the Trustee does not rest his entire argument of Bennett's breach of fiduciary duty on the Ponzi scheme allegation: "[c]ommitting bank fraud as an officer of a company and *either* running a Ponzi scheme . . . *or* falsifying the audited financial statement of the company are clear breaches of fiduciary duty." Trustee's Motion, p. 14. (emphasis added). Bennett offers no cogent opposition to the Trustee's contention that the acts underlying his convictions on the bank fraud and falsifying audited financial statements charges constitute breaches of Bennett's fiduciary duties. Moreover, this Court cannot conceive of a successful argument that such acts would not violate those fiduciary duties.

■ As for the identity requirement of collateral estoppel, this Court finds that the issues determined in Bennett's criminal convictions on the money laundering counts of 64–69, 71–71 and 77, and defrauding the three savings institutions counts of 25, 32, 32 and 38, are substantially identical with the Trustee's civil count XXIX for breach of fiduciary duty. Those issues were actually litigated in the criminal trial, and that trial's determinations regarding those issues was essential to the verdict returned.

As a result, the application of collateral estoppel to the criminal trial's jury verdict is appropriate as to count XXIX. This Court will submit proposed findings of fact and conclusions of law to the District Court to that effect.

### Count XXVII of Trustee's Adversary Proceeding Complaint

■ As discussed above, collateral estoppel requires identity of issue between the two actions. The criminal counts on which Bennett was convicted, and upon which the Trustee seeks to base his motion for partial summary judgment on civil count XXVII, are 64–69, 71, 72 and 77 (the money laundering counts), and 85, 86, 87, 89 and 91 (the counts regarding Bennett's illegal transfer of Bennett company funds to his personal account).

Each one of these criminal counts corresponds to acts which took place on specific days between April 7, 1993 and January 3, 1995. As Bennett correctly points out, however, the acts set forth in the Trustee's civil count XXVII were alleged to have taken place between March 30, 1995 and March 29, 1996. In other words, Bennett was convicted of criminal behavior during one time period, and the Trustee now seeks to use collateral estoppel in order to obtain partial summary judgment on a count involving behavior during an entirely different, later period. This is not the purpose for which collateral estoppel was intended. As noted above, of the four elements required in order for collateral estoppel to apply, "[t]he most difficult element ... is the requisite 'identity of issue' requirement of the first prong." Hon. Barry Russell, Bankruptcy Evidence Manual, § 3:1, at 257 (2007). Although the criminal counts upon which the Trustee seeks to base his partial summary judgment on count XXVII (64–69, 71, 72, 77, and 85, 86, 87, 89 and 91) are similar to those alleged in that count, they are not identical. See, e.g. Dixie Nat'l Life Ins. Co. v. McWhorter (In re McWhorter), 887 F.2d 1564, 1568 (11th Cir.1989) (holding that although defendant's acts of fraud and misrepresentation were similar in nature and close in time to those then before the court, that was not enough to satisfy the identity of issue requirement in order to apply collateral estoppel). See also Rufenacht v. Iowa Beef Processors, Inc., 656 F.2d 198 (5th Cir.1981) (holding that since each claim was referable to a separate and distinct transaction, and although they were similar in nature and close in time, they were not identical for the purposes of applying collateral estoppel). In the matter at hand, the issues determined by Bennett's conviction on the criminal counts specified by the Trustee simply do not meet the identity of issue requirement when compared to the allegations in count XXVII of the Complaint.

The Trustee argues that civil count XXVII includes a claim under NYDCL §§ 270–281, which has a six year statute of limitations. The Trustee contends that the acts alleged in count XXVII should be understood to have occurred as far back as that statute of limitations reaches; this would result in count XXVII's encompassing the time period covered by the relevant criminal counts. This argument is unavailing. A plain reading of count XXVII reveals allegations of fraudulent conveyances committed by the defendants "between March 30, 1995 and March 29, 1996." That these acts were also alleged to have violated NYDCL §§ 270–281 does not push back the dates of the alleged criminal acts to the encompass that entire six year statute of limitations. The Trustee has provided no case law to support such an interpretation.

The failure of the Trustee's allegations in count XXVII to meet the identity of issue requirement in relation to the cited criminal counts is fatal to his application to apply collateral estoppel to the conviction resulting from those criminal counts.

## Exceptions to Collateral Estoppel [30]

 Although not raised by either party, the Court examined the Restatement 2d of Judgments, § 28, "Exceptions to the General Rule of Issue Preclusion:"

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public inter-est or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement 2d of Judgments, § 28. *See also In re Selheimer & Co.*, 319 B.R. 395, 403 (Bankr.E.D.Pa.2005) (applying § 28 of the Restatement, and explaining that the application of this section is for the *"rare exception"* to the doctrine of issue preclusion) (emphasis added).

Each of these five exceptions to the doctrine of collateral estoppel, as they would apply to the matter *sub judice,* will be examined *seriatim.*

*First,* Bennett clearly availed himself of the opportunity to obtain review of the judgment in the initial criminal action by his appeal of that verdict. *Second,* the two actions do not involve substantially unrelated claims; in fact, they involve very closely related claims. Nor is a new determination warranted to take into account an "intervening change in the applicable legal context" or to avoid inequitable administration of the laws. *Third,* there are no material differences in the quality or extensiveness of the procedures followed in the District Court of the Southern District of New York and this Court which would warrant a new determination. Nor are there any factors relating to the allocation of jurisdiction between these two courts which would warrant a new determination. *Fourth,* Bennett did not have a

---

**30.** The four prongs of the *Gelb* test for application of collateral estoppel are referred to by that court as "limitations" on the doctrine of collateral estoppel. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986).

"significantly heavier burden of persuasion" in the District Court for the Southern District of New York than he would have in this Court. In fact, the opposite is true: the elements of the criminal charges against Bennett had to be proven by the government 'beyond a reasonable doubt,' a standard of proof exceeding that of the 'ordinary preponderance of the evidence' standard to which the Trustee would be held in this Court.[31] And *fifth*, Bennett had an adequate opportunity (a fair trial and subsequent appeal) and significant incentive (to avoid incarceration) to obtain a full and fair adjudication in the initial action. In addition, granting preclusive effect to Bennett's criminal convictions would not have an adverse impact on the public interest, and cannot be said to have been unforeseeable at the time of the initial action, as the Trustee's Complaint (upon which the Trustee's Motion is based) was filed several years prior to Bennett's criminal trial.

As a result, none of the exceptions to the application of collateral estoppel to Bennett's criminal convictions would prevent the preclusive effect of those convictions as to civil counts XI and XXIX of the Complaint.

*Conclusion*

The moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding if summary judgment is proper, the court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Keeffe v. Natalie*, 337 B.R. 11, 13 (N.D.N.Y.2006).

■ "Summary judgment is appropriate under the doctrine of collateral estoppel (issue preclusion) when all the material facts in a pending action have been actually and necessarily resolved in a prior proceeding." *Mishkin v. Ageloff*, 299 F.Supp.2d 249, 252 (S.D.N.Y.2004).[32]

As outlined above, this Court finds that the essential elements the Trustee in this case would have to prove to establish Bennett's liability as to civil counts XI and XXIX were actually and necessarily determined against Bennett in counts 85, 86, 87, 89 and 91 (count XI) and counts 25, 32, 33, 38, 64–69, 71–72 and 77 (count XXIX) of his criminal trial and appeals thereof, and that Bennett has not met his burden of demonstrating that he did not have a full and fair opportunity to litigate the issues at his criminal trial. As a result, the Trustee is entitled to partial summary judgment on count XI of the Complaint.

---

**31.** *See Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir.2006) (opining that where the first court's determination of fraud involving elements congruent with fraud under bankruptcy law is established by a stricter standard, considerations in favor of applying collateral estoppel are greatly enhanced).

**32.** The facts in *Mishkin* are analogous to the present matter. Defendants were convicted in a criminal trial of violations of Section 10(b) of the Securities and Exchange Act of 1933. The plaintiff Trustee brought an action under the Securities Investor Protection Act of 1970 ("SIPA"). The *Mishkin* court found that the SIPA violation allegations brought by the Trustee "parallel[ed] the events and charges determined at the [criminal] trial." *Mishkin* at 253. The court found that "the essential elements the Trustee would be required to prove to sustain Defendants' liability in this action were determined against the defendants in the criminal proceeding and embodied in the judgments there rendered." *Id.*

Because count XXIX is a "related to" non-core matter, this Court will submit proposed findings of fact and conclusions of law to the District Court recommending a finding that the Trustee is entitled to partial summary judgment as to that count.

Also as outlined above, this Court finds that because the identity requirement of collateral estoppel has not been met, the Trustee is not entitled to partial summary judgment on civil count XXVII based on Bennett's conviction on criminal counts 64–69, 71–72, 77, 85, 86, 87, 89 and 91.

### Bennett's Motion to Dismiss

 At the outset, the Court notes that a *pro se* litigant is generally afforded some degree of flexibility in demonstrating the validity of its claim. *See In re Fanelli,* 263 B.R. 50, 58 (Bankr.N.D.N.Y.2001) (citing *Boguslavsky v. Kaplan,* 159 F.3d 715, 719 (2d Cir.1998)). In addition, a *pro se* litigant's complaint and supporting papers may be read liberally so as to raise the strongest arguments suggested therein. *Id.* Moreover, "implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (citing *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

 Bennett has styled his pleading as a Fed.R.Civ.P. 12(b)(6) motion to dismiss. However, he has appended to his motion an affidavit and six exhibits.[33] In a Fed.R.Civ.P. 12(b)(6) motion, a court may not consider material beyond the four corners of the complaint. In fact, "if a party presents matters outside the complaint, the court must convert the motion to dismiss into a summary judgment motion." 2–17 Moore's Manual of Federal Practice and Procedure, § 17.03[3], Matthew Bender & Co., Inc. (2006). *See also Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 474 (E.D.N.Y.1998) (holding that when deciding a Fed.R.Civ.P. 12(b)(6) motion, courts are directed to treat the motion as one for summary judgment if matters outside the pleading are presented to and not excluded by the court).

The Court finds the affidavit and exhibits Bennett attached to his Motion irrelevant to the substance of his Motion, and thus will not consider them as supporting documents thereto or as matters outside of the Complaint. As a result, the Court will continue to treat Bennett's motion as a Fed.R.Civ.P. 12(b)(6) motion to dismiss the Complaint, rather than convert the motion to one seeking summary judgment.

This Court has previously set out in this case the standard for ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6):

> The court is to dismiss the complaint only if it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court should not weigh the evidence but should instead accept the facts as they appear in the complaint as true, to find whether the plaintiff has alleged

---

**33.** These exhibits consist of a Settlement Agreement Bennett reached with the S.E.C. on July 7, 2004 ("Ex.1"); a Summary Order of the May 31, 2001 U.S. Second Circuit Court of Appeals decision affirming Bennett's criminal convictions ("Ex.2"); a Summary Order of the September 18, 2003 Second Circuit Court of Appeals decision affirming Bennett's sentence ("Ex.3"); two pages from an April 3, 2003 New York State Division of Tax Appeals Administrative Law Judge decision declining to give preclusive effect to Bennett's criminal convictions in a tax dispute ("Ex.4"); two pages from a December 6, 2001 decision of State Supreme Court Justice Stone regarding Bennett's defamation claims against various defendants ("Ex.5"); and a January 25, 2000 report prepared by the 'Halo Group' regarding BFG's financial position ("Ex.6").

sufficiently all of the legal elements necessary to state a claim under the law.... Based on the foregoing standards, this Court must analyze Plaintiff's Complaint to determine whether he has alleged any set of facts, along with any reasonable inferences which may be drawn in his favor, which are sufficient to entitle him to relief.

*Breeden v. Sphere Drake Insurance PLC*, 2000 Bankr.Lexis 1693, Adv. Pro. No.97-70049A (Bankr.N.D.N.Y. March 3, 2000) (citations omitted).

### 1. Failure to Allege a Ponzi Scheme

██ As mentioned in this Decision's discussion of Bennett's argument against granting preclusive effect to his criminal convictions as they apply to the Complaint's count XXIX, the Court has never finally ruled on whether the fraudulent activity which resulted in the Bennett Companies' collapse constituted a Ponzi or 'pyramid' scheme. As discussed in that same section, however, this Court is compelled to agree with U.S. District Court Judge John S. Martin, Jr., who presided over Bennett's second criminal trial and "... found that the evidence 'established beyond any conceivable doubt that Bennett was the prime mover in a fraud that took hundreds of millions of dollars from the victim investors.'" *United States v. Bennett*, 252 F.3d 559, 565 (2d Cir.2001) (quoting *United States v. Bennett*, 2000 WL 420547, U.S. Dist LEXIS 4928 (S.D.N.Y. 2000)).

More specifically, however, the question here is twofold: whether any of the counts of the Complaint rely upon the proof of the existence of a Ponzi scheme at any of the BFG companies; and if so, can the Trustee prove no set of facts in support of that claim which would entitle him to relief?

First, the Court is unable to detect how any one of the forty-three counts of the Complaint fails without proof that BFG was operated as a Ponzi scheme. It is true that the Trustee, in the Overview and Facts sections of the Complaint, does allege that what took place at BFG was a Ponzi scheme.[34] None of the following forty-three counts, however, depends entirely upon that allegation. Each of those counts can easily stand upon its own without proof of the existence of a Ponzi scheme.[35]

Secondly, even if one, several, or all of the forty-three counts of the Complaint did in fact depend upon proof of the existence of a Ponzi scheme, Bennett's argument still does not meet the burden imposed upon him by the motion to dismiss standard. Both the S.E.C.'s characterization of the events which led to the collapse of BFG as a Ponzi scheme (Complaint, pgs.2-3), and the Trustee's argument that those same events meet the elements of a Ponzi scheme as set out in *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n. 3 (2d Cir.1995), would make it impossible for this Court to rule that the Trustee could prove no set of facts in support of his claim which would entitle him to relief.

### 2. Failure to Satisfy Fed.R.Civ.P. 9(b)

██ The need to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b)[36] is well settled, and Bennett correctly cites

---

34. *See* Complaint, ¶¶ 1,116,117,122,154.

35. Even count XXIX, which of all forty-three counts in the Complaint most specifically alleges the existence of a Ponzi scheme, also alleges that Bennett assigned leases to BFG investors which were either fictitious or had already been assigned to other investors. *See* Complaint, ¶ 265.

36. *See* footnote 10, *supra*.

to several cases which confirm this rule.[37]

■ But the Trustee correctly points out that this Court has already examined the Complaint with regard to Fed.R.Civ.P. 9(b), and found that the Complaint alleged facts with sufficient particularity to satisfy the requirements of Fed.R.Civ.P. 9(b). *See Breeden v. Patrick R. Bennett,* Case No.97–65399, Adv.Pro.No. 98–770876A, slip op. at 5 (Bankr.N.D.N.Y. February 9, 1999). Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Kovian v. Fulton County National Bank and Trust Co.,* 857 F.Supp. 1032, 1042 (N.D.N.Y.1994) (*citing DiLaura v. Power Authority of State of New York,* 982 F.2d 73, 76 (2d Cir.1992)). This Court's prior holding regarding the particularity of the Complaint's fraud allegations is just the sort of ruling to which the law of the case doctrine is meant to apply. The Court sees no reason to rule differently in the present matter.

■ In fact, case law supplies ample precedent for a less than rigorous application of the Fed.R.Civ.P. 9(b) particularity requirement in a matter such as this. "Greater liberality in the pleading of fraud is particularly appropriate in bankruptcy cases, because ... it is often the trustee, a third party to the fraudulent transaction, that must plead the fraud on secondhand knowledge for the benefit of the estate and all of its creditors." *Securities Investor Protection Corporation v. Stratton Oakmont, Inc.,* 234 B.R. 293, 310 (Bankr. S.D.N.Y.1999) (citing *In re White Metal Rolling & Stamping Corp.,* 222 B.R. 417, 422 (Bankr.S.D.N.Y.1998)). Or, again, "[w]hen the trustee's lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time, the trustee's handicap increases[,] and courts, therefore, should afford him or her even greater latitude." *Id.* (*citing A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.,* 1998 WL 159059, 1998 U.S. Dist. Lexis 4175 (S.D.N.Y. April 1, 1998)). *See also Sunrise Indus. Joint Venture v. Ditric Optics, Inc.,* 873 F.Supp. 765, 772 (E.D.N.Y.1995) (holding that "the particularity requirement of Rule 9(b) is appropriately relaxed where the individual defendant is a corporate insider.") Given the length of time during which the fraud in question is alleged to have occurred, its level of complexity, and Bennett's status as a corporate insider the entire time of the alleged fraud,[38] the Trustee has satisfied the Fed. R.Civ.P. 9(b) particularity requirement.

---

**37.** Bennett's citation to *In re Sinder,* 102 B.R. 978 (Bankr.S.D.Ohio 1989), however, is curious. Bennett cites *Sinder* for the proposition that "merely alleging that substantial sums of money are unaccounted for due to [a] party's alleged fraud does not satisfy [the] pleading requirements of Rule 9(b)." Bennett's Motion, p. 6. The *Sinder* court, however, reasoned that "a balancing factor in completing an analysis of the specificity requirements of Rule 9(b) is the recognition that the essence of fraud and misrepresentation is the absence of truthfulness and the full disclosure required in the particular circumstances. For that reason, Rule 9(b) does not require the pleading of detailed evidentiary matter." *In re Sinder,* 102 B.R. at 986 (citations omitted). So not only did the *Sinder* court acknowledge that Fed.R.Civ.P. 9(b) is not to be applied without analysis, it also acknowledged that the existence of the fraud itself by its very nature involves the absence of full disclosure and truthfulness on the defendant's part, thus relieving the plaintiff of the requirement to plead "detailed evidentiary matter." *Id.* The *Sinder* court went on to hold that the complaint in that case was, in fact, "based on and supplemented by tangible evidence ... related to the transactions in question." *Id.* at 986–87.

**38.** *See* footnote 3, *supra.*

### 3. Improperly Based "Upon Information and Belief"

First, as with the Fed.R.Civ.P. 9(b) issue, the law of the case controls here. This Court has already ruled that the Complaint meets the Fed.R.Civ.P. 9(b) particularity requirements. Hence, any argument that the because the complaint is pled on information and belief it does not meet the Fed.R.Civ.P. 9(b) requirement fails at the outset.

But even absent the law of the case doctrine, Bennett's allegation that any element of a complaint pled upon information and belief "must be dismissed as a matter of law" (Bennett's Motion, p. 8) is incorrect. First, Bennett misquotes the primary case he cites for this proposition; the actual citation is *"[c]onclusory* pleadings on information and belief are inadequate as a matter of law." *Lesavoy v. Lane*, 304 F.Supp.2d 520, 527 (S.D.N.Y. 2004) (emphasis added). Whether or not the pleadings on information and belief are conclusory becomes very relevant when other case law on this issue is examined. First, there is the *DiVittorio* exception, which Bennett acknowledges, stating that pleadings on information and belief are acceptable "as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." *DiVittorio*, 822 F.2d at 1247. Bennett's argument that this exception does not apply because the Trustee has had considerable access to BFG's books and records, and because his allegations "were not accompanied by a statement of the facts upon which the belief is based" (Bennett's Motion, p. 9) is unavailing. This is true because despite the Trustee's *post hoc* access to BFG's books

and records, the byzantine nature and extensive duration of the alleged fraud necessarily resulted in certain facts remaining peculiarly within Bennett's knowledge. Secondly, Bennett's allegation that the Complaint does not contain "a statement of the facts upon which the belief is based" is not supported at all in Bennett's Motion, which merely states that this "requirement [is] clearly not met here." Bennett's Motion, p. 9. Such a conclusory allegation belies either a lack of careful reading on Bennett's part, or a willful effort to ignore the first fifty-four pages of the Complaint. The facts set out in those first fifty-four pages at the very least effectively prevent the allegations contained in the Trustee's counts from being characterized as *conclusory*. *See also Prince v. Madison Square Garden*, 427 F.Supp.2d 372, 385 (S.D.N.Y. 2006) (holding that allegations pled on information and belief are proper if accompanied by a statement of the facts upon which the belief is founded) (citing *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.*, 1985 WL 210, 1985 U.S. Dist. Lexis 23199 (S.D.N.Y.1985)).[39]

### 4. Code § 548 One Year Time Limit

As stated above, Bennett asserts that counts I, II, XVI, XVII, XXVII and XXVIII which allege, *inter alia*, violations of Code § 548, must be dismissed because they do not allege any violations within the one year period immediately preceding the Debtors' filing, as required by that section of the statute.

The Trustee asserts that the three predicate transactions underlying each of these counts occurred within the one year limit imposed by Code § 548, and that the relevant dates of the transactions are set out

---

**39.** This line of cases seems to dispose of the *DiVittorio* requirement that there must be facts which are "peculiarly within the oppos-ing party's knowledge" in order for a party to plead "on information and belief."

clearly in each of these counts in the Complaint. In fact, a review of ¶¶ 78, 118, and 257 of the Complaint, when read in conjunction with the relevant counts, bears out this assertion. Moreover, the Trustee is correct in asserting that even if the predicate transactions took place outside of the one-year limit, each of these counts also alleges violations of §§ 270 through 281 of the NYDCL, made applicable pursuant to Code § 544(b), which have a statute of limitations of six years from the date of the filing of the petition. Thus, even absent the Code § 548 allegations, these counts cannot be dismissed insofar as Bennett has proffered no argument for dismissing those portions of the counts alleging violation of NYDCL §§ 270–281.

### 5. Improperly Asserted Turnover Counts

Bennett argues that 1) counts VII, X, XI, and XII seeking turnover of estate property must be dismissed on the basis that the transfers in question occurred before the Debtors entered bankruptcy, and 2) that because the Complaint does not allege that Bennett had a possessory interest in the property at the time of the commencement of the case, a motion for turnover is not appropriate.[40] Each of these arguments is treated in great detail in this Decision's discussion of the Trustee's Motion for Partial Summary Judgment on count XI of the Complaint, *supra.* As set forth in that discussion, the Trustee's turnover counts are properly asserted.

### 6. Trustee Lacks Standing Under §§ 544 and 550

Bennett bases his argument that the Trustee lacks standing to bring counts I, II, XVI, XVII, XXVII and XXVIII on the fact that the Complaint does not "allege the existence of a creditor who would have standing to attack the . . . transfers, much less as required to give Bennett required notice of a specific creditor." Bennett's Motion, p. 17. As the Trustee points out, however, the Complaint names three separate creditors, at ¶¶ 50, 56 and 58 of the Complaint, thus meeting the requirement that the Trustee name an unsecured creditor who would have standing to challenge the transfer, as set out in *In re Wingspread,* 178 B.R. 938, 946 (Bankr.S.D.N.Y. 1995).[41]

However, the Trustee falters when he contends that each of the relevant counts also alleges violations of NYDCL §§ 270 through 281, which do not require the existence of such a creditor. In fact, in order to qualify for standing under 544(b), the Trustee "must show that at least one of the present unsecured creditors of the estate hold an allowable claim, against whom the transfer or obligation was invalid under applicable *state* or federal law." *In re Wingspread,* 178 B.R. at 945 (emphasis added). *See also In re Lol-*

---

**40.** Bennett does not indicate who was in actual or constructive possession of the property sought for turnover at the time of BFG's filing. This is not surprising, given his criminal convictions on the counts cited by the Trustee.

**41.** Bennett characterizes the *In re Wingspread* court as dismissing the trustee's complaint because the trustee had merely alleged the existence of unsecured creditors. Motion, p. 16. That is not correct. In reality, the *In re Wingspread* court noted that the trustee had

named "trade creditors of Kayser–Roth and/or subsidiaries" generally as unsecured creditors, and held that this lack of specificity was not enough to grant summary judgment to defendant. Instead, the *Wingspread* court held that "... *at trial* the trustee must prove the existence of at least one unsecured creditor who ... could have ... attacked and set aside the transfer under consideration." *In re Wingspread,* 178 B.R. at 946. (emphasis added).

*lipop, Inc.*, 205 B.R. 682, 687 (Bankr. E.D.N.Y.1997) (holding that as required by Code § 544(b), the Trustee may utilize *state* fraudulent conveyance law to avoid a transfer only if there exists an actual unsecured creditor who could void the transfer under applicable law.) The only time a trustee would not need to name an actual unsecured creditor to establish standing would be when the applicable state law allows a trustee in bankruptcy to bring the proceeding on his own behalf rather than succeeding to the rights of an actual unsecured creditor. *See In re Wingspread*, 178 B.R. at 946. New York Business Corporation Law § 720(b) is such a statute.[42] NYDCL §§ 270–281, however, is not. Hence, the Trustee cannot maintain that he has standing on the state law NYDCL allegations in the event he does not succeed to the rights of an actual unsecured creditor. But, as outlined *supra*, this Court finds that the Trustee does have standing to maintain the relevant counts, because his naming of three unsecured creditors in the Complaint meets the requirement set out in *In re Wingspread*.

### 7. Failure to Allege a State or Federal Statute

Bennett argues that counts XXIX, XXXIV, XXXV, XLI and XLII, alleging, respectively, Breach of Fiduciary Duty, Breach of Fiduciary Duty—Self Dealing, Breach of Fiduciary Duty—Corporate Waste and Mismanagement, Accounting, and Constructive Trust, must be dismissed because they fail to put Bennett on notice as to alleged violations of any specific state or federal statute. As a result, Bennett argues, he is not "on notice of the charges upon which he must defend himself, to ensure [Bennett's] constitutional rights to

due process of law." Bennett's Motion, p. 18. This is a creative and sophisticated argument, but it is completely wrong. It is so convincing, however, that even the Trustee seems to have been flummoxed by it. In the Trustee's Response he parries Bennett's argument by belatedly listing several statutes which would have been violated by the actions alleged in those counts, completely evading Bennett's point that the Complaint did not put him on notice as to which statutes he was alleged to have violated.

■ However, two of the nation's most esteemed appellate jurists disagree. Judge Richard A. Posner of the U.S. Seventh Circuit Court of Appeals has made it clear that a complaint need not put the defendant on notice as to which state or federal statute he or she is alleged to have violated:

> The civil rules, as both the Supreme Court and this court have emphasized repeatedly [ ], establish a system of *notice pleading*. The plaintiff is *not required to plead facts or legal theories or cases or statutes*, but merely to describe his claim briefly and simply. In a suit to collect on a promissory note, for example, all the plaintiff has to allege is that he is holding the defendant's note to him and the defendant owes him dollars on it. *He doesn't have to specify the statute or common law principle that the defendant has violated by failing to pay him.*

*Shah v. Inter–Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir.2002) (emphasis added) (citations omitted).

---

**42.** That section reads, in relevant part, "An action may be brought for the relief provided in this section ... by a corporation, or a receiver, *trustee in bankruptcy*, officer, director or judgment creditor thereof ..." New York Business Corporation Law § 720(b) (McKinney's) (2006) (emphasis added).

Judge Frank H. Easterbrook, also of the U.S. Seventh Circuit Court of Appeals, addressed the same issue:

> Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it. Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents. [ ] *Instead of asking whether the complaint points to the appropriate statute,* a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.

*Bartholet v. Reishauer A.G.,* 953 F.2d 1073 (7th Cir.1992) (emphasis added) (citations omitted).

It is clear that the counts Bennett seeks to have dismissed here meet the three requirements of a pleading set out in an earlier Bennett decision: "... the pleading must be specific enough to serve the three purposes of Rule 9(b), which are (1) to provide a defendant with notice of the claims against it; (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits." *In re Bennett Funding Group, Inc.,* 1997 Bankr.Lexis 2366 *36 (Bankr.N.D.N.Y. 1997). Even more to the point,

> [i]n federal practice, pleadings are intended simply to put the defendant on notice as to the basic nature of plaintiff's case and to give the plaintiff a general idea of the defenses raised. Pleadings are to be liberally construed and a complaint should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

*In re E.C.Ernst, Inc.,* 1 B.R. 262, 263 (Bankr.S.D.N.Y.1979) (citation omitted).

Thus, Bennett's argument that counts XXIX, XXXIV, XXXV, XLI and XLII should be dismissed for failure to allege a state or federal statute fails itself. He cannot be heard to say that these counts of the Complaint did not put him on notice as the nature of the [Trustee's] case.

*Conclusion*

On each of the seven grounds upon which Bennett seeks to dismiss each of the counts in the Trustee's Complaint, Bennett has not met his burden to show that the Trustee can prove no set of facts in support of his claim which would entitle him to relief. Each of these seven grounds fails as a basis for dismissal because it either incorrectly states the law (improperly asserted turnover, failure to allege a state or federal statute), is based upon an incomplete reading of the case law (failure to satisfy Fed.R.Civ.P. 9(b), improperly based upon information and belief), or an incomplete reading of the Complaint (Code § 548 one year time limit, Trustee lacks standing under §§ 544 and 550) or is irrelevant (failure to prove a Ponzi scheme). It would have made no difference to the outcome if the standard had been one for summary judgment rather than Fed. R.Civ.P. 12(b)(6) dismissal.

Based on the foregoing, it is hereby

ORDERED that the Trustee's motion for partial summary judgment with respect to count XI of the Complaint is granted; and it is further

ORDERED that the Trustee's motion for partial summary judgment with respect to count XXVII of the Complaint is denied; and it is further

RECOMMENDED to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 157(c)(1) that the Trustee's motion for

partial summary judgment with respect to count XXIX of the Complaint be granted; and it is further

ORDERED that that portion of Bennett's Motion to Dismiss Counts I through IV and VI through XXVIII of the Complaint is denied; and it is further

RECOMMENDED to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 157(c)(1) that that portion of Bennett's Motion to Dismiss Counts V and XXIX through XLIII of the Complaint be denied.

In re The BENNETT FUNDING GROUP, INC., Debtors.

Richard C. Breeden, Trustee of The Bennett Funding Group, Inc., et al., Plaintiff,

v.

Patrick R. Bennett, Edmund T. Bennett, Kathleen M. Bennett, Michael A. Bennett, Gwen Bennett, Bennett Financial Associates, Bennett Funding of New York, Kenneth P. Kasarjian, Kenton Group, Inc., Charles Genovese, Hemlock Investor Associates, High Mountain Associates, Highwood Investor Associates, Mutual Investors Funding Corporation, Comfort Financial Associates, Comfort Associates, Inc., Olympus Property Management Corporation, Allegro Property & Finance, Inc., Joseph J. Canino, John Does 1–100, M.A. Bennett Associates, Ltd., Hotel Syracuse, Inc., Mahoney Cohen & Company, P.C., Defendants.

Bankruptcy No. 96–61376.
Adversary No. 96–70154.

United States Bankruptcy Court, N.D. New York.

May 2, 2007.

